**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Steven Jeffrey GREENWALD,
Defendant-Appellant.**

**No. 72–2117.**

United States Court of Appeals,
Sixth Circuit.

June 1, 1973.

Harry E. Youtt (Court Appointed), Cleveland, Ohio, James London of counsel, for defendant-appellant.

Joseph T. McGinness, Asst. U. S. Atty., Frederick M. Coleman, U. S. Atty., Joseph T. McGinness, Asst. U. S. Atty., Cleveland, Ohio, on brief, for plaintiff-appellee.

Before PHILLIPS, Chief Judge, McCREE, Circuit Judge, and PRATT *, District Judge.

PRATT, Judge.

The defendant, Steven Jeffrey Greenwald, was convicted by a jury for a violation of Title 18, United States Code, Section 2314, transporting in interstate commerce "goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud." The crucial issue presented by this appeal is whether secret chemical formulae, or formulations, fall within the statutory language of "goods, wares or merchandise."

The facts are essentially undisputed. Researchers of Pearsall Corporation, defendant's employer, discovered a substitute for antimony oxide, a rare and expensive chemical used in fire retardation processes. The uniqueness of Pearsall's formulations provided an appreciable competitive advantage and it chose not to reveal its discovery but to utilize it in the manufacture of its own products. The number of documents containing the formulations, therefore, was highly restricted but one set was disseminated to the defendant, a chemical engineer employed in the sales department.[1]

The uncontradicted testimony of an officer of Pearsall Corporation and the President of Dover Chemical Company, both experienced and knowledgeable in the workings of the chemical industry, demonstrated that there is an established market, even among competitors, of chemical formulae and formulations. While there is, in addition, a commerce in finished products or components, it is not uncommon, according to that testimony, for chemical manufacturers to exchange formulae and formulations either by outright sale or through licensing agreements. Significantly, these formulae are treated as assets, in the same manner as machinery, equipment or accounts receivable.

It is within this context, then, that the defendant contacted a Pearsall Chemical Corporation competitor in Ohio and negotiated for the transmittal of the formulation documents that had come

---

* Honorable Philip Pratt, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. The set appropriated by the defendant was in the handwriting of a co-discoverer. Security considerations had prompted Pearsall Chemical Corporation to refrain from typing, printing or otherwise duplicating the original documents.

into his possession. After several telephone calls and a personal meeting in New Jersey, it was agreed that the competitor would pay defendant $40,000 for the documents. On August 21, 1970, by pre-arrangement, defendant journeyed to Cleveland, Ohio, and he was there apprehended in the course of consummating the sale.

While this definitional issue is one of first impression in this Court, we have no hesitancy in following the short but impressive interpretations adopted by the Third and Second Circuits in United States v. Seagraves, 265 F.2d 876 (3rd Cir. 1959); United States v. Lester, 282 F.2d 750 (3rd Cir. 1960), cert. denied 364 U.S. 937, 81 S.Ct. 385, 5 L.Ed.2d 368 (1961); American Cyanamid Company v. Sharff, 309 F.2d 790 (3rd Cir. 1962); United States v. Bottone, 365 F. 2d 389 (2d Cir. 1966), cert. denied, 385 U.S. 974, 87 S.Ct. 514, 17 L.Ed.2d 437; In Re Carol Vericker, 446 F.2d 244 (2d Cir. 1971).

*Seagraves, supra,* was concerned with the theft and sale of geophysical maps relating to locations of potential oil deposits. In considering the application of 18 U.S.C. § 2314, the Court said:

> "The terms 'goods, wares, merchandise' is a general and comprehensive designation of such personal property or chattels as are ordinarily a subject of commerce. Black's Law Dictionary, 4th ed. 823 (1951); 1 Bouv.Law Dict. Rawle's Third Revision p. 1365 (1914). There was evidence that maps of the type here involved are frequently sold; there was also expert testimony (other than by Gulf people) which placed the value on some of the individual maps alone at well over $5,000. Since the maps were shown without doubt to be subjects of commerce, albeit of a specialized nature, they are goods or wares or merchandise within the terms of the Act."

In a case strikingly similar to the one at bar, the Second Circuit was concerned, in part, with the theft and sale under 18 U.S.C. § 2314 of secret processes used by a drug manufacturer. Judge Friendly, speaking for the Court, stated that there was no doubt that ". . . papers describing manufacturing procedures . . ." are within the ambit of the Act.

So, here, given an established, viable, albeit limited, market in chemical formulations, and the wrongful appropriation of original documents containing such formations, the normal, ordinary and logical import of the statutory language dictates the conclusion that the documents here are "goods, wares or merchandise" within the meaning of the Act.

Other issues raised by defendant are considered to be without merit.

Affirmed.